May it please the Court, the question in this case is whether state law claims against insurance agents about procurement of private excess insurance is preempted by federal law? The answer to that question I submit is no for two independent reasons that I think stand before the Court with equal dignity. The first is that claims against insurance agents are not preempted. The second is that claims based on private insurance coverage are not preempted by the federal scheme. And I want to address both of those issues with the Court today. I think the Court could take either path to decision and it may wish to write on both to clarify the law in this area. I provided the Court with a one-page bench exhibit because I want to begin by looking at the foundation of preemption analysis in this area. The foundation appears in Article 9 of the Federal Flood Policy, which is the first quotation I provided. It's essentially a choice of law clause that's dictated by FEMA regulations with force of law that says that the policy and all disputes arising from handling of any claim under the policy are governed by federal law. And that provision charts the two paths to reversal in this case. First, this claim does not involve handling. And second, it does not arise under the policy. Let me begin with the handling analysis, because this Court's precedent is... Yes, Your Honor. Why would you begin with that one? Because the second one, as I understand it, it doesn't matter whether you're a handler or a procurer. That's correct, Your Honor, and I'm happy to begin with the second one, because I actually agree that the second is the simplest answer for reversal. And so let me start there. I was going to preview that by talking about the Court's development of these handling and procurement claims, but with respect to the fact that this is a private insurance policy, there's really no reason to even get into that distinction. Let me ask you, you say that it's a private-funded excess policies. What was the cost? When were they purchased? There's no evidence on the record that they actually exist. Your Honor, the allegations in the complaint, and this case was dismissed on the pleadings, the allegations in the complaint are that prior to Hurricane Harvey, my client had had a private excess insurance policy. Which expired. That policy had been allowed to lapse. The defendants, the insurance agents here had represented to my clients that they had full coverage, that they were fully covered in the event of a flood loss. They never made any disclosure that the excess policy had been paid for. Nor did your client pay for it. Well, that's correct, Your Honor. My client hadn't paid for the policy that wasn't in existence. And so the point is that the client had been told it had full coverage, and the client relied on those representations. There was an obligation under Texas law of the insurance agent to secure the coverage that had been requested. And particularly in Texas where there's a fiduciary relationship that can arise when you have an insurance agent that's able to rely on the insurance agent to secure coverage. Just strictly on pleading sufficiency, would full, complete, and sufficient be enough? I think, Your Honor, it is with respect to the pleading sufficiency. And here let me digress for just a moment because I want to put in context how this case arose. Remember this case was filed in Texas state court. In Texas court under the notice pleading rules in Texas, there's no doubt that that pleading would have been sufficient to state the claim. The case was removed to federal court. There was a controversy about whether federal question jurisdiction arose here, largely on the same rationale as the preemption analysis. So the parties clashed about the jurisdictional question. After the jurisdictional ruling, the complaint was amended one time simply to address the jurisdictional analysis to make clear that the complaints that were being lodged here against the insurance agents were related to the absence of an excess policy that was a private insurance policy. So there was never any motion. I don't mean to circle you around away from what Judge Higginson asked you at the outset, but I think intertwined in this, what would have been really helpful is a timeline of the, we're talking about excess insurance on top of a flood insurance policy, an NFIP. Is that correct? Yes, that's correct. And the NFIP had already been in existence for, I'm not asking for an exact date, but let's say since they own the house. I believe the record reflects at least since 2015. Okay, fine. So the NFIP policy is in effect and it has limits of, what was it, 250? I think it's 250 for the structure and 100 for the content. And is that the maximum coverage that can be purchased under NFIP? Your Honor, I believe it is. Okay. So they're fully insured and then they also procure sometime prior to the loss, the excess policy, which is excess to not only the flood policy, but all homeowners or anything, any other insurance claim? Your Honor, I believe it was excess to the federal flood policy. To the flood policy. That's correct. And I understand the court's question about the desire for a chronology. The record doesn't provide that level of detail. And the point that I was... The case law seems to suggest there's a difference between a procurement and a renewal, doesn't it? Well, it does, Your Honor, but we're not dealing here with renewal of a federal policy. What the case law deals with is the distinction between handling and procurement when you're thinking about renewal of a federal policy. This was not a federal policy at all. It's a purely private policy. And so to complete the point that I wanted to make about chronology before I return, Your Honor, to your question, is that the pleadings were amended once after the jurisdictional debate to make explicit that the only complaint against the insurance agents related to this private excess policy that had been allowed to lapse and the representations that had been made about full coverage, that there was no complaint made regarding the FEMA policy. And you can see that in the record at page 425 and page 431. Those are passages in the amended complaint that make that statement. There was never a motion filed that challenged the sufficiency of the pleadings to allege that the pleadings were insufficiently specific to state a claim. And so my clients never were on notice that they should be providing the kind of detail that the court is suggesting it might have preferred. Again, the pleading originated in state court under state court pleading rules. Once the case is reversed on preemption, as I submit it should be, and it's remanded to the district court, if the defendants wish to file a Twombly motion and challenge the sufficiency of the pleadings, they can certainly do so. And my clients will have the right then to meet that motion and to request leave to amend. But that didn't happen here. And that's why there's not the level of detail in the pleadings that the court might desire in order to answer that question. Well, how do you even know what the value of the excess policy was that you're contending you should have had in effect if it wasn't purchased or renewed? Your Honor, the allegations are that the clients desired full coverage of their property. That's a $20 million piece of property. That's not going to happen. Well, Your Honor, it would be substantial coverage and it would entail a substantial premium, but I don't think there's anything in the record or the case law that would suggest it's impossible to secure that coverage. And the allegation is that that coverage had been enforced previously. That can be tested on remand. You don't identify the policy that was allowed to lapse? There was no obligation to identify it, Your Honor. Again... Well, if you want to win, you have to have the right facts. That's true, Your Honor. And we will have to prove those facts ultimately on remand. I don't believe under federal pleading standards it would be necessary to plead that level of detail. But we'll be happy to meet that level of detail in response to a Twombly motion. It wasn't. That was never raised. Yes, Your Honor. A $20 million policy that lapsed, that your client believed was in effect? Your Honor, I'm arguing based solely on the allegations in the complaint. I have no personal knowledge of these facts. The allegations in the complaint are that the clients desired full coverage, that they were assured that they had full coverage, and that their home and assets was worth $20 million. And those are the inferences that I draw from the complaint. Remind me of the complaint. Do they say that the Gallagher company specifically said private? It'll be a private excess? Your Honor, I believe that the allegations in the complaint allude certainly to excess coverage. I can't recall with precision whether the complaint alleges references to a private excess policy. But there's no such thing as a federal excess policy. There's only the federal standard flood policy. It cannot be varied. And they had that and they got that? They had that. They got that. They have no complaints about it. And they disclaim in the amended complaint. Any complaint about the federal flood policy. So there's no question that this is not a case that implicates the federal flood policy. And that brings me back, Your Honor, to the question that you had posed originally, which is, isn't the simplest answer to the question from my standpoint that this involves allegations about private insurance and not the federal policy? And I think that's exactly right. How did Judge Rosenthal not, if that's correct, how did she miss that? Where did our law confuse her? Your Honor, I want to credit my good friend, Mr. Fogler, who's a effective advocate. And he persuaded Judge Rosenthal to follow the Grissom decision from this court that used the status of the insured as a test to determine whether a claim involves handling and is therefore preempted or procurement and therefore is not preempted. And he argued, because there was a federal policy in force, it was a handling claim was The problem is Grissom had nothing to do with private insurance. It dealt only with a federal flood policy. And Grissom had nothing to do with a claim against an insurance agent. It dealt with a claim against a YO insurer. And so the court said explicitly in Grissom that it was dealing with a test regarding interactions between the insurer and the insured doesn't deal with the agent and it has nothing to do with a private policy. So Grissom has nothing to do with this case, but that's the way the district court went awry because the court followed Grissom rather than looking to these more fundamental questions. And so when you look at the express preemption clause and the fact that express preemption arises, quote, under this policy, I think it's obvious that there cannot be express preemption with respect to a claim that is not, quote, under this policy, which is the private excess insurance claim. And likewise, there cannot be conflict preemption because this court's decision in Campo teaches that the litmus test for conflict preemption is whether the claim would ultimately affect the federal FISC. And obviously, a claim related to the procurement of a private excess insurance policy cannot affect the federal FISC. So there is no scenario under which a complaint about a private excess insurance policy could be preempted under the plain language of the regulation or under this court's precedent. The reason I was going to begin with the argument about agent status is not that it's simpler because I think that the private status of this claim is the simpler basis for decision, but it is because the authorities speak to the question about preemption of agent claims directly. And these are the other two points that I have attached in the bench exhibit. You see, first of all, in 42 U.S.C. section 4081C, Congress has specified that FEMA may not hold harmless or indemnify an agent for his or her error or omission. That is critical because it underscores, first, this entire scheme has nothing to do with insurance agents. It has to do only with the WIO insurers. Second, recall that the conflict preemption test is whether federal funds will be implicated by the claim. And section 4081C specifically declares no federal funds can be implicated by a claim against the insurance agent because the federal government cannot indemnify the agent. The federal government and the federal flood program simply has no concern about claims against agents, which is why in the final passage that I have quoted for the court, and we have attached this at exhibit A to our briefs, FEMA itself has stated specifically, insurance agent procurement disputes or any allegation of negligence on the part of the insurance agent related to procurement are not subject to preemption. Now my friends have not given the court any answer to section 4081C. They have not given the court any answer to their understanding of the significance of the FEMA statement that claims against agents are not preempted. And the reason is that there is no answer. This is a private policy. It is not implicated by express preemption under the regulation or by this court's decisions on conflict preemption. It is a claim against an agent, which is specifically disclaimed by FEMA and by Congress as a matter of federal concern or a basis for preemption. So I think that the preemption rationale of the district court cannot be defended. With the one minute that I have left, I want to anticipate what I suspect Mr. Fogler will want to discuss, which is not the preemption rationale of the district court, but arguments about the sufficiency of the pleadings. I've already anticipated that with the court. This was not a Twombly-Igbal motion. This was a preemption motion. My clients have not had an opportunity to address a Twombly motion. They have a right to answer that motion and request leave to amend. This court's decision in LaGuardia, I think it's Judge Garwood's decision, I've always thought it was the best statement of the rule in this kind of situation. The court can affirm for any basis that appears in the record, but when it's a basis that wasn't developed in the district court, and it appears that the record is not fully developed, the court will not entertain an alternative basis for affirmance. And that is exactly what is going on here. You cannot decide the sufficiency of these pleadings until my clients have fair notice and an opportunity to address that issue and to request leave to amend. I thank the court for its time. Thank you, counsel. Well, he complimented you, but he also predicted where you're going to go. May it please the court. My learned colleague is not only a great appellate lawyer, he's my former law partner. He knows me well. It's fun for us to hear talented and friendly lawyers. I would like to narrow what I perceive to be in dispute here. We do not dispute the principles that Mr. Post has set out in his oral argument exhibit. We do not dispute that claims, procurement claims against an agent are not preempted. We understand that. They do not dispute, on the other hand, that there are certain claims against agents involving handling that are preempted, even in a private insurance situation, which is what Mr. Post is hanging his hat on. We know that because, in this very appeal, the appellants have conceded that they pleaded handling claims that were properly preempted and dismissed, even in a private insurance situation. Okay, slow down. Break that up a little for me, because you're saying what they conceded. Is this a private policy, excess policy, that has no connection to the federal one? Or are we looking at a linkage? Of course that there's a linkage. Is that essential to what you're saying was their concession? It is essential because, as in the Grissom case, this case is very similar to Grissom, where there was a national federal insurance policy in effect. The issue there was whether there should have been a renewal of that policy or some preferred risk in addition to that policy, and the court says, as long as there is an NFIP policy in place, at the time the claim arose, it's a handling claim. There's a bright line test here. Now, here's where I just differ with my colleague. He says this case is not about sufficiency of pleadings, but it is to a certain extent. He is correct that we did not file a 12B6 motion. We did file a 12C motion. It was a motion, as the rule states, after the pleadings are closed. Now, the procedural sequence of events here is very important because once the removal was made to the federal district court and the remand was denied, we filed our 12C motion. At the time, they said, wait, we would like to have an opportunity to amend. The court said, fine, take that opportunity. Amend your complaint. They did. We amended our 12C motion, and at the time, the pleadings, they had filed whatever they wanted to file to clarify the claims, having the roadmap that the court had given them about the preemption issue. And they decided to stand on the same pleadings that they had filed in the state court with the exception of some additional statements. We're not seeking to get into the federal fisc. But they stood on their pleadings. So when Judge Rosenthal examined those pleadings, she found that as to this bright line division, that is, claims that arose before the NFIP policy was in effect, those claims were not pleaded sufficiently enough to state a claim. There was no definition in the complaint about when any statements were made, what the statements were, if there was this excess policy, what was the amount, what did they want. All of those facts were omitted. And importantly, in this appeal, the appellants are not challenging the ruling that all of those claims that arose before the institution of that NFIP policy were too vaguely pleaded to withstand the motion. What they are saying is, we pleaded some claims, not clear exactly which ones they are, but they say, we must have pleaded some claims that arose after the NFIP policy was in place, that are not preempted. Some of them were preempted, they concede, but some of them were not. The reason... They concede that it was supposed to renew them, the private excess policy, and failed to do so and let it lapse. Well, it's interesting, Your Honor, that they have sort of re-characterized what would otherwise be a failure to renew, which this Court has recognized as a handling claim, into a, you allowed this to lapse. It's really the flip side of the same event. There had been a policy in place, then there was no policy in place. And this, in fact, is the reason why Judge Rosenthal writes in her order, in a footnote, when you're dealing with a federal policy, like this one, you are charged with the knowledge of what that policy says, and you should have recognized that you didn't have this excess policy any longer. One of the reasons why, and there are a couple of reasons why, they don't deserve another opportunity to go back and try to amend to get their pleadings in shape, aside from the fact that the pleadings were closed in a 12C situation, is the very reasons why Judge Rosenthal threw out the Chubb part of the case, which was against a private insurer, but a write-your-own policy. Those reasons apply equally to the claims against the agent here, should have read the policy. If you're claiming events that occurred before the inception of the policy, they're barred by limitations. In other words, amendment would be futile here, because there is no real claim to be had. So they had their opportunity. Am I missing? That argument, that sort of transitively, the Chubb dismissal should be the same, has nothing to do with preemption, or am I missing something? Because when I look at the Congress's language, they say, under this policy, I think that's the FDIP policy. So why would Congress ever want to preempt accuracy as to state policies? Because if you have inaccurate representations as to state excess policies, you're going to need federal relief. So Congress would never want to preempt, and therefore that's why they wrote under this policy, state excess. That's my thinking. So I keep thinking preemption really has nothing to do with this at all. Is that right or wrong? It's not exactly correct, because had they asserted a claim that we wanted private excess insurance before the NFIP policy was in place, we can see that would have been a proper procurement claim that was not preempted. Let's say they just want it on top of while they've got a federal one. That's preempted? What's the law that says that? The problem here, and I think the reason for the bright line test that the circuit has set out and joined by all the other circuits as well, is that if you have a federal policy in place, and that's the only one you have, and there's an event, a calamity, a flood, that causes a whole bunch of damage, pardon the pun, but the courts will be flooded with claims that we wanted, we really wanted to have more insurance. Say you make an exception for agents. Is it just private agents like my client, the Gallagher Company, or is it agents of insurance companies that are writing federal flood insurance? Where do you draw the line? So the courts have, I think presciently, said, we're going to make a clear demarcation. If the policy is in effect, then anything that happens while that policy is in effect implicates that policy. The federal government has said, we want to cover the landscape. So you have to reach preemption under your theory, because they did have a federal policy, no one disputes it, they recover on it. So any statements made, regardless, as to private excess funds are preempted. Exactly, which is why they had to concede that when they pleaded in their Deceptive Trade Practice Act claim, for example, or their insurance code claim, that there were, you made misrepresentations about the character of the policy, what policy were they talking about? There was only one policy in effect at the time, it was the federal NFIP policy. They conceded. Those claims against the private agent were preempted. And the best case that extends preemption to purely private excess policies under this CAMPO timeline approach is Grissom? No, that was purely federal. It's what case? I don't know of a case, Your Honor, that is precisely like this one, where there was a private excess policy at issue. And I may be ignorant, you all know, why wouldn't everyone on the coast, in the Gulf, have to be getting private excess? You would think they would always be doing it, because the federal amount's pretty low. So it startles me there's no case, but it makes me think that in state courts, agents are being held to be honest. It's not being preempted. Well, the purpose for the program in the first place was because people were not covered for this event that was happening with increasing frequency. And the government wanted to encourage people to get the NFIP policy. Not everybody can afford to get an excess policy that would cover perhaps above $250,000. But then, let's face it, there are not that many $20 million homes as well. So this was a unique situation here that they are conveniently, after the fact, claiming, oh, we wanted additional insurance that would have protected us once the hurricane hit. But that's the reason for, that's the whole purpose of this preemption, is to protect against those insurers, to encourage them to provide these NFIP policies. So the agent that's selling the federal one with impunity can say, and I'll get you a lot of state coverage too, I'll make up the difference, and no? No, because if those representations had been made prior to the inception of the policy, it would be a procurement claim that was not preempted. They would have been able to validly proceed against the agent for a procurement dispute if they had adequately pleaded it. But the court goes through in laborious detail, in her district court opinion, why the procurement claims, those that arose before the inception of the policy, were not adequately pleaded. This is a pleading sufficiency case. And they had their opportunity to re-plead. Did Gallagher procure the excess policy that had lapsed? Yes. I don't think that's in the record, but I think, yes, we did. So you knew about it? Yes. Did you know they wanted to renew it? Well, if you read their complaint, they are very careful not to say we actually requested it. They say, you knew us well enough, you should have known we wanted it. So there was no request to renew it? There's certainly nothing in the record to indicate that. I have nothing further. Thank you very much, counsel. Thank you. Mr. Post? I'll make just three arguments in rebuttal. The first is, you heard counsel talk about a bright-line test, and I wrote down what he said to make sure I got it exactly right. He said, quote, when you're dealing with a federal policy like this one, close quote, the court applies a bright-line test. But we're not dealing with a federal policy. That is the false premise of their entire argument. The test that they rely on, the Grissom test, relates only to a federal flood policy. The reason the court had to draw the line in Grissom between procurement and handling was to deal with the express preemption clause in the federal policy that says handling is subject exclusively to federal law. It has nothing to do with claims... Hasn't he clarified that the position he's saying is that even state claims, state policies, are preempted provided they were sought or discussed during the pendency of any existing federal policy? He certainly has clarified that that is his position, but he has no legal authority to support it. Grissom does not support it. Grissom deals only with claims related to federal policies and only with claims against the insurer, which is why Grissom had to deal with that line. Is there a case law that rebuts that, or is it you just say it's on the face of the... Your Honor, I think the case that best explains the distinction is a district court opinion. It's the Pittman case, which is cited in our briefs. I believe it's the Western District of Missouri, if I recall correctly. But in the Pittman case, the district court explained why Congress would have no concern about protecting independent insurance agents. These are independent insurance agents, not the federal insurer, from liability for misrepresentations or negligence with respect to their obligations. And, Your Honor, with respect to your question about whether there was a request, I don't think the record resolves that question either way, but it doesn't matter, because under Texas law, in a situation like this where there's an ongoing relationship and the insurance agent knows of the client's expectations, the insurance agent has a duty to secure the coverage. And so that's an immaterial question that just hasn't been developed on this record. Well, you say if they knew of the intentions, but opposing counsel said that there was no request to renew. That's... I think, Your Honor, simply taking the record farther than he can take it. If you look at the allegations in the First Amendment complaint, which are to be taken as true, the agents repeatedly assured my clients that they were fully covered in the event of a flood loss, and they had extensive knowledge about the value of this property. They visited this property. They examined this property for underwriting purposes. So he's just extrapolating too much from the record. The second point I want to address, Your Honor, is counsel's argument that we agree that some claims related to handling here are preempted. I think that's a slight misstatement of my position, and so I want to make sure that it's clear. We agree that the claims related to the FEMA policy here, which included both handling and procurement allegations, were properly dismissed. They were properly dismissed because the FEMA policy was paid. No claim against an agent is preempted. That's what FEMA says explicitly. Agent negligence is not preempted. Now, the truth of the matter is, agents don't handle claims. Agents are involved in procuring policies. If the trial counsel in this case overpleaded the allegations, such that they could be read as alleging handling by agents, that may not have been a viable allegation. But that doesn't mean that we're conceding that anything as to the agents is preempted, because both the statute and the FEMA memorandum, I think, indicate the contrary. And the key point here, I will acknowledge that the pleadings were broad, and that they are not precisely tailored to this particular dispute. But the Cipollone decision from the Supreme Court teaches you must determine preemption on a claim-by-claim basis. So the fact that some of those allegations may not have been viable, even if the court thought some allegations were preempted, doesn't mean that all claims here are preempted, and the claims related to private access insurance by agents plainly are not. So the third and final point that I want to address is the question of whether we have a right to meet a Twombly challenge and address the sufficiency of the pleadings. This is what counsel said to Judge Rosenthal in the final filing they made in the exchange on this issue. They raised all of these criticisms of the first amended complaint that you've heard today, and they said on page 539 of the record, those are issues, quote, for another day, if the claim survives. Because this was not a Twombly motion. We did not have an opportunity to meet that challenge. We have not had the opportunity to amend. And you know that that is not the basis for Judge Rosenthal's ruling, because at page 562 of the record, she recognized in this order that she would be obligated to give an opportunity to amend if she found that the pleadings were insufficient. She did not do that. And the reason is that she didn't rule on the sufficiency of the pleadings. She ruled on preemption. So you should reverse the preemption holding and send the case back to Judge Rosenthal for further proceedings. Thank you all. On lawyering to finish the sitting. We have no more cases for the day of the session.